IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 19-20497 |
| Hidalgo County Emergency Service Foundation, | § § § § | Chapter 11 |
| Debtor. | § | |
| Hidalgo County Emergency Service Foundation, | § § § | |
| Plaintiff. | § § | Adv. No. 20-2006 |
| v. | § § | |
| Jovita Carranza, Administrator, Small Business Administration, | § § § § | |
| Defendant. | § | |

**Defendant's Brief Concerning Temporary Restraining Order**
(Related to Doc. No. 1)

The Defendant submits this brief in advance of the April 24, 2020, hearing to consider the Plaintiff's request for temporary restraining order.

## Summary

The Defendant requests that the Court deny the Plaintiff's request for a temporary restraining order. Among other reasons, the Plaintiff is unlikely to succeed on the merits. Section 525 of the Bankruptcy Code only prohibits discrimination in the context of "a license, permit, charter, franchise, or other similar grant." It does not prohibit a governmental unit from discriminating on the basis of bankruptcy when choosing whether to guarantee a loan. Moreover, the United States

1

has not waived sovereign immunity for a claim seeking injunctive relief against the Administrator for allegedly exceeding statutory authority.

## Background

**The Small Business Administration**

Through the Small Business Act, 15 U.S.C. § 631 *et seq.*, Congress created the SBA to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," in order to preserve the system of free competitive enterprise that is "essential" to the economic well-being and security of the Nation. 15 U.S.C. § 631(a). To promote that objective, Congress placed the SBA under the management of a single Administrator, *id.* § 633(a), (b)(1), who is given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns. *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a) (describing numerous varieties of general small-business loans the Administrator is "authorized" and "empowered" to make); 13 C.F.R. § 120.1. In the performance of these authorized functions, the Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions … [that] [she] determines … are necessary or desirable in making … loans." 15 U.S.C. § 634(b)(6), (7).

**Section 7(a) Lending**

The section 7(a) loan program is the SBA's primary program for providing financial assistance to small businesses. Under the terms of the Small Business Act,

2

SBA financial assistance to a small business under section 7(a) may take the form of a direct loan, an immediate participation (joint) loan with a lender, or a deferred participation (guaranteed) loan initiated by a lender but a portion of which the SBA will purchase from the lender in the event of a borrower default.  13 C.F.R. § 120.2(a); *see Valley Nat'l Bank v. Abdnor*, 918 F.2d 128, 129 (10th Cir. 1990); *California Pac. Bank v. SBA*, 557 F.2d 218, 219 (9th Cir. 1977).  In practice, however, the SBA ordinarily guarantees loans made by private lenders rather than disbursing funds directly to borrowers, *see United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 (1979), thus "reduc[ing] risk for lenders … mak[ing] it easier for them to access capital," and thereby "mak[ing] it easier for small business to get loans."  *See* https://www.sba.gov/funding-programs/loans.

**Section 7(a) Loan Underwriting**

Ordinarily, to qualify for an SBA general business loan an applicant must be an operating business organized for profit that is located in the United States, 13 C.F.R. § 120.100(a)-(c); meet the size standards for a "small" business set forth under the statute and SBA rules (usually stated in terms of number of employees, or average annual receipts), *see* 15 U.S.C. § 632(a)(2); 13 C.F.R. § 120.100(d); 13 C.F.R. Part 121; and demonstrate that the desired credit is not available elsewhere on reasonable terms, 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.

In addition to these requirements, the Small Business Act requires that "[a]ll loans made under this subsection *shall* be of such sound value or so secured as reasonably to assure repayment."  15 U.S.C. 636(a)(6) (emphasis added).  The factors

3

to reasonably assure repayment are described in general terms in 13 C.F.R. § 120.150. Further factors are described in greater detail on the official application form for 7(a) loans. *See* SBA Form 1919, available at https://www.sba.gov/document/sba-form-1919-borrower-information-form. Among other considerations, the official form considers whether the applicant has "ever filed for bankruptcy protection." *Id*. By regulation, requirements listed on this form, and other official SBA forms, comprise part of the "Loan program requirements." 13 CFR Sec. 120.10. Application forms are incorporated into the regulations as part of Loan program requirements defined in 13 C.F.R. Sec. 120.10.

**The Coronavirus Aid, Relief, and Economic Stimulus (CARES) Act**

On March 27, 2020, President Trump signed into law the Coronavirus Aid, Relief, and Economic Stimulus ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, passed by Congress to provide an unprecedented package of emergency economic assistance and other support to help individuals, families, businesses, and health-care providers cope with the enormous economic and public health crises—unlike any experienced in the lifetime of the Nation—triggered by the worldwide coronavirus (COVID-19) pandemic. *See* SBA, Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program" ("PPP Interim Final Rule"), Fed. Reg. Vol. 85 No. 73 at 20811.

Among the numerous measures taken by the CARES Act to address the COVID-19 crisis, of concern here is the Paycheck Protection Program ("PPP"), CARES Act. § 1102, enacted to extend relief to small businesses experiencing economic

hardship as a result of the public-health measures being taken to minimize the public's exposure to the COVID-19 virus. *See* PPP Interim Final Rule at 1, 3; https://www.sba.gov/sites/default/files/2020-04/PPP--IFRN%20FINAL_0.pdf. Specifically, section 1102(a)(2) of the CARES Act adds a new paragraph (36) to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36), which provides that "*[e]xcept as otherwise provided in this paragraph*, the [SBA] *may* guarantee [PPP] covered loans"—not make loans directly, however—"under the same terms, conditions, and processes as a loan made under this subsection," i.e., section 7(a). 15 U.S.C. § 636(a)(36)(B) (emphasis added).

The PPP then sets forth in extensive detail the precise ways in which PPP covered loans differ from other section 7(a) loans. *Id*. § 636(a)(36)(D)-(R). Among these differences, the PPP authorizes the SBA to make covered loans to various non-profit organizations, independent contractors, and self-employed individuals, as well as to small business concerns, *id*. § 636(a)(36)(D)(i), (ii); relaxes size limitations to allow businesses with as many as 500 employees (or more, depending on the industry in which they operate) to receive assistance, *id*. § 636(a)(36)(D)(i)(I); and (iii) selectively waives certain of the SBA's affiliation rules used to make small business "size."

Except where explicitly altered, the CARES Act leaves the requirements of the section 7(a) lending program intact, including the requirement that "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6).

**Emergency Rulemaking Authority**

The CARES Act authorizes the Administrator of the SBA to issue emergency regulations without complying with typical notice and comment requirements. CARES Act § 1114. The Administrator of the SBA issued its PPP Interim Final Rule on April 3, 2020. The PPP Interim Final Rule notes that lenders need not comply with case by case underwriting requirements of 13 CFR 120.150. PPP Interim Final Rule at 20812. Instead, the PPP Interim Final Rule states that lenders will fulfill underwriting requirements by following certain steps enumerated in the PPP Interim Final Rule. *Id*. at 20815. The PPP Interim Final Rule then states that "Each lender's underwriting obligation under the PPP is limited to [the enumerated] items above and reviewing the 'Paycheck Protection Application Form.'" The Paycheck Protection Application Form itself requires the borrower to certify, among other things, that it is "not presently involved in a bankruptcy." Available at, https://www.sba.gov/sites/default/files/2020-04/PPP-Borrower-Application-Form-Fillable.pdf.

## Brief

I.  **11 U.S.C. § 106**

Clearly the United States has waived sovereign immunity under 11 U.S.C. § 525. 11 U.S.C. § 106(a)(1). However, the waiver of sovereign immunity is limited so that "[t]he enforcement of any . . . order, process or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit . . . ." 11 U.S.C. § 106(a)(4).

Nonbankruptcy law applicable to the SBA specifically prohibits the issuance of any "attachment, injunction, garnishment, or other similar process" against the SBA Administrator. 15 U.S.C. § 634(b)(1); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 n. 6 (5th Cir. 1994). Although the Defendant discusses below why the Plaintiff is unlikely to succeed on the merits of its claims, the United States has not waived sovereign immunity for a temporary restraining order against the Defendant. Therefore, regardless of whether the Plaintiff is able to show a likelihood of success, threat of irreparable injury, a favorable balance of the injuries, and the weight of the public interest, the Court has no jurisdiction to enter a temporary restraining order against the Administrator of the SBA.[1]  11 U.S.C. § 106(a)(4); 15 U.S.C. § 634(b)(1); *see U.S. v. Mel's Lockers, Inc.*, 346 F.2d 168 (10th Cir. 1965) (waiver of sovereign immunity in Bankruptcy Act did not override prohibition on injunctions in 15 U.S.C. § 634(b)).[2]

## II. Plaintiff Not Substantially Likely to Prevail on the Merits

The Plaintiff alleges that the Defendant discriminated against the Plaintiff in violation of 11 U.S.C. § 525 and exceeded statutory authority. The Plaintiff is not likely to prevail on either theory.

---

[1] "To obtain a preliminary injunction, [movants must] demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that their substantial injury outweighed the threatened harm to the party whom they sought to enjoin, and (4) that granting the preliminary injunction would not disserve the public interest." *Planned Parenthood Ass'n of Hidalgo County Texas, Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012). This brief focuses on the Plaintiff's likelihood of success on the merits, which is so minimal as to outweigh the other factors.

[2] *See also, e.g., In re Kight*, 460 B.R. 555 (Bankr. M.D. Fla. 2011) (compliance with § 106(a)(4) requires taxpayers to exhaust administrative remedies before seeking damages for discharge violation); *In re Winchester*, 191 B.R. 93 (Bankr. N.D. Miss. 1995) (compliance with § 106(a)(4) requires award of attorneys' fees against governmental unit to comply with nonbankruptcy law).

### A. No Violation of 11 U.S.C. § 525

Section 525(a) of the Bankruptcy Code prohibits a governmental unit from denying, revoking, suspending, or refusing to renew "a license, permit, charter, franchise, or other similar grant . . ." on the basis of being or having been a debtor in bankruptcy.

By its plain language, the prohibition in 525(a) does not apply to lending or loan guarantees. Indeed, the only mention of lending in Section 525 is found in subsection (c), added in 1994 to address government student loan programs. 103 P.L. 394 § 313. Subsection (c) provides: "[a] governmental unit that operates a student grant or loan program . . . may not deny a grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or . . . under the Bankruptcy Act . . . " 28 U.S.C. § 525(c). " If Section 525 applied to government extension of credit or guaranties, Congress would not have needed to amend the law to include government student loan programs. Further, in amending the law, Congress could have addressed other government lending programs, but chose only to address government student lending.

The Fifth Circuit interprets 11 U.S.C. § 525 narrowly. *In re Exquisito Services, Inc.*, 823 F.2d 151, 153 (5th Cir. 1987). Under the Fifth Circuit's reading of the statute, relief is only appropriate if a court determines both that (a) the action or inaction by a governmental unit is covered by the statute, and (b) the governmental unit was motivated primarily by the status or former status as a debtor in bankruptcy. *Id*. (noting narrow application to "situations analogous to those

8

enumerated in the statute" and requirement of "proof that the discrimination was caused solely by the debtor's status").[3]

The debtor in *Exquisito* participated in an SBA program for non-competitive bidding on government contracts, and, through that program, the debtor contracted with the U.S. Air Force to provide food services at Barksdale Air Force Base. 832 F.2d at 152. The contract was for a term of one year with two one-year options. Exquisito filed bankruptcy during the contract, and the Air Force told Exquisito that it would not exercise the options due to the bankruptcy. Exquisito then sued alleging discrimination violating 11 U.S.C. § 525(a).

The Fifth Circuit examined the SBA program to decide whether it was covered under 11 U.S.C. § 525(a). The Court concluded that the nature of the program was to train minority-owned businesses, and based on this conclusion, it considered the SBA program to be in the nature of a franchise. Because the SBA program was in the nature of a franchise, the Fifth Circuit concluded that the contractual relationship was covered under § 525(a), affirming the injunction against the Air Force.

Hidalgo County Emergency Service Foundation is in a different position. The Plaintiff does not allege the existence of a pre-bankruptcy contract with the SBA. The Plaintiff alleges that the SBA is violating 11 U.S.C. § 525(a) by refusing to guarantee a new loan issued to the Plaintiff by its bank.

The facts here are more akin to *Ayes v. U.S. Dept. of Veterans Affairs*, 473 F.3d 104 (4th Cir. 2006). The *Ayes* plaintiffs sued the VA arguing that it violated 11 U.S.C.

---

[3] *See also F.C.C. v. NextWave Personal Communications Inc.*, 537 U.S. 293, 302 (2003) (applying "proximate cause" standard to evaluate governmental unit's motivation).

9

§ 525 by "refusing to restore veteran home-loan guaranty entitlements . . . solely because of their previous discharges in bankruptcy." *Id.* At 105. The district court granted the VA's motion to dismiss, and the plaintiffs appealed.

The Fourth Circuit focused exclusively on "the legal question of § 525(a)'s applicability to the veteran guaranty entitlement"—specifically whether a guaranty was a "similar grant" under § 525(a). *Id.* at 108. Deciding that the language of § 525(a) was plain, the Fourth Circuit determined that a "guaranty entitlement bears no such resemblance to the items listed in § 525(a)." The Fourth Circuit noted that the enumerated grants in § 525(a) all "implicate[d] 'government's role as a gatekeeper in determining who may pursue certain livelihoods' . . . and show that Congress intended § 525(a)'s protections to be limited to situations sufficiently similar to *Perez*." 473 F.3d at 109 (quoting *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th Cir. 1998); *In re Goldrich*, 771 F.2d 28, 30 (2d Cir. 1985)).[4] To the contrary:

> A home loan guaranty . . . does not implicate the government's gatekeeping role in determining who may pursue certain livelihoods because, unlike the enumerated items in § 525(a), a person can obtain a home loan or guaranty from the private sector.

473 F.3d at 109.

The Sixth Circuit reached a similar result in *Toth*, 136 F.3d 477. The plaintiff in that case applied for a home improvement loan through a state agency, but the state agency denied it due to the plaintiff's prior bankruptcy. The plaintiff sued under § 525(a), the district court granted summary judgment, and the plaintiff appealed.

---

[4] *See also Perez v. Campbell*, 402 U.S. 637 (1971) (prior to codification of 11 U.S.C. § 525, prohibiting discrimination in issuance of driver's license on account of bankruptcy).

The Sixth Circuit engaged in a similar examination to the Fourth Circuit in *Ayes*, *i.e.*, whether 11 U.S.C. § 525(a) covered the loan program. *Id.* at 479. The Sixth Circuit decided that the items enumerated in § 525(a) were "unrelated to the extension of credit," but were instead related to the "government's role as a gatekeeper in determining who may pursue certain livelihoods." *Id.* at 480. Because the extension of credit was dissimilar, it was not covered by 11 U.S.C. § 525(a), and the Sixth Circuit affirmed. *See also Watts v. Pennsylvania Hous. Fin. Co.*, 876 F.2d 1090 (3d Cir. 1989) (mortgage assistance program not covered by § 525(a)); *In re Goldrich*, 771 F.2d 28 (2d Cir. 1985) (§ 525(a) did not cover credit decisions).[5] [6]

The Plaintiff's situation is similar to these decisions from other Circuits. The Plaintiff has submitted an application for credit, and it wants the SBA to guaranty its loan. The SBA's decision whether to do so is not a gateway function that would determine whether the Plaintiff can enter or remain in the ambulance market—it has entered and currently exists there. The Plaintiff is also free to seek a loan from a private source—indeed the United States is informed that the Debtor has been seeking to do that throughout this case. Because the decision to extend a guaranty is not covered by § 525(a), the Plaintiff is unlikely to succeed in a suit against SBA under that subsection.

---

[5] *Goldrich* dealt with student loans, which have since been specifically addressed in 11 U.S.C. § 525(c).

[6] *See also, e.g., In re Jasper*, 325 B.R. 50, 55 (Bankr. D. Me. 2005) (revoking credit union privileges on the basis of filing for bankruptcy did not violate section 525); *United States v. Cleasby*, 139 B.R. 897, 900 (Bankr. W.D. Wis. 1992)(holding a loan is not a "similar grant" within the meaning of § 525 and declining to extend § 525 protection to applications for debt restructuring); *Lee v. Yuetter*, 106 B.R. 588, 592 (Bankr. D. Minn.1989) (declining to extend § 525 protection to applications for debt restructuring program and analogizing program to extensions of credit), *aff'd*, 917 F.2d 1104 (8th Cir.1990).

11

### B.     Authority under the CARES Act

The Plaintiff is also unlikely to succeed on its claim that the Defendant exceeded statutory authority because the United States has not waived sovereign immunity for that claim in this Court.

The Plaintiff cites *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1075 (1st Cir. 1987), and *Mar v. Kleppe*, 520 F.2d 867 (10th Cir. 1975), for the proposition that the Defendant may be sued for allegedly exceeding authority, cases discussing 15 U.S.C. § 634. However, the Fifth Circuit has "concluded that all injunctive relief directed at the SBA is absolutely prohibited." *Enplanar*, 11 F.3d at 1290 n. 6 (quoting *Ulstein*); 15 U.S.C. § 634(b)(1) (". . . but no attachment, injunction, garnishment, or other similar process . . . shall be issued against the Administrator or [her] property").

The Plaintiff tries to circumvent the prohibition on injunctive relief against the Defendant by alternatively requesting "a declaration," but the declaration sought would be injunctive. The Plaintiff's requested declaration would compel the SBA to "remove all references to a loan applicant's status as being involved in any bankruptcy" and compel the SBA to "instruct all lending institutions . . . that there is no exclusion from the [Paycheck Protection Program] loan program on account of involvement in bankruptcy." [Doc. No. 1, pp. 8-9]. Regardless of whether the Plaintiff calls these requests "injunctions" or "declarations," the Plaintiff asserts claims for injunctive relief.

Plaintiff is also unlikely to succeed on its claim that the Defendant exceeded statutory authority because the claim lacks any merit. Plaintiff argues that the

12

bankruptcy exclusion must be unlawful because it is not specifically mentioned in the CARES Act.[7] But this is far from sufficient. The Court instead "must apply *Chevron* deference when considering questions implicating the agency's construction of the statute it administers." *Koesoemadinata v. McAleenan*, 2019 WL 4418223, at *2, Case No. 4:19-cv-1921 (S.D. Tex. 2019) (citations omitted). In applying *Chevron*, the court must first determine whether "Congress has directly spoken to the precise question at issue" and, if not, the court must determine "whether the agency's interpretation is based on a permissible construction of the statute." *Id.* (quoting *Chevron*, 467 U.S. at 842-43). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* (quoting *Chevron*, 467 U.S. at 843-44); *see Baptist Memorial Hosp. - Golden Triangle, Inc. v. Azar*, 2020 WL 1907770, at *2 (5th Cir. 2020) ("if 'the statute is silent or ambiguous with respect to the specific issue,' we must defer to the agency's interpretation so long as it 'is based on a permissible construction of the statute.'") (quoting *Chevron*, 467 U.S. at 843). "These regulations are 'given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting *Chevron,* 467 U.S. at 844). "If the delegation is implicit rather than explicit, 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'" *Id.* (quoting *Chevron,* 467 U.S. at 844).

---

[7] The PPP Application Form includes other limitations not specifically addressed in the CARES Act. For instance, the PPP excludes entities that have been debarred from federal programs.

The SBA was delegated broad authority to implement its lending programs – the bankruptcy exclusion falls within this authority. The SBA Administrator is explicitly empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions … [that] [she] determines … are necessary or desirable in making … loans." 15 U.S.C. § 634(b)(6), (7). The CARES Act did not limit this authority. Rather it expanded it, by giving the Administrator authority to issue new regulations and rules to implement the PPP without complying with typical notice and comment requirements. CARES Act § 1114.

Excluding entities in active bankruptcy from the PPP falls within the SBA's broad authority to implement its lending program. First, nothing in the CARES Act prohibits the bankruptcy exclusion. The CARES Act instead left intact the existing requirement that loans "be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. 636(a)(6). The Administrator has discretion to implement that general requirement.

Prior to the PPP, the SBA allowed lenders to consider bankruptcy status in their case-by-case underwriting. *See* 13 C.F.R. 120.150; Form 1919. To meet the urgent need for funding, the SBA "streamlin[ed] the requirements of the regular 7(a) loan program." *See* PPP Interim Final Rule at 5. Under the PPP, lenders are required only to "review[] the Paycheck Protection Application Form," among certain other enumerated items. The Paycheck Protection Application Form, with its bankruptcy

14

exclusion, is thus explicitly incorporated in the PPP Interim Final Rule. And the Administrator had broad and explicit authority to issue that rule.

### III. Scope of Injunction

In the event the Court enters an injunction, the Defendant requests that the injunction be limited to this Plaintiff. Both the nationwide injunction requested by the Plaintiff and the District-wide injunction contemplated by this Court would be overly-broad.

The relief entered by a court must be "tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S.Ct. 1916. This includes injunctions, which "should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)) (emphasis added); *see Trump v. Hawaii*, 138 S. Ct. 2392, 2429 (2018) (Thomas, J., concurring) (nationwide injunctions "are legally and historically dubious"); *DHS v. New York*, 140 S.Ct. 599 (Gorsuch, J., concurring) (criticizing entry of relief in excess of the case before the trial court). The need to narrowly tailor relief is even more paramount when at the temporary restraining order or preliminary injunction phase, tools designed to "preserve the relative positions *of the parties*" until final judgment. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added).

The Defendant asserts that even an injunction limited to the Southern District of Texas is too broad. The Plaintiff has brought suit, and although the Defendant disputes that the Plaintiff is entitled to relief, if the Plaintiff is, any relief should be

limited to the Plaintiff. That is all that is necessary to preserve the relative positions between the parties, and, because any injunction extending beyond the Plaintiff does nothing to redress any injury by the Plaintiff, the Plaintiff lacks standing to request more. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (requiring requested relief to be likely to redress alleged injury to show standing).

### IV. Public Policy

The Defendant disputes that the Plaintiff can show that the balance of public policy considerations weigh in favor of granting the requested temporary restraining order. The SBA and the public have an interest in expeditious administration of the Paycheck Protection Program, and traditional underwriting requirements would potentially delay it. The prohibition on lending to companies in bankruptcy allows the Program to continue with shorter-than-normal due diligence periods.

Accordingly, the Defendant requests that the Court deny entry of the temporary restraining order requested by the Plaintiff.

Dated: April 24, 2020.

                                    Respectfully submitted,

                                    RYAN K. PATRICK,
                                    United States Attorney

By:   *s/ Richard A. Kincheloe*
       Richard A. Kincheloe
       Assistant United States Attorney
       Attorney-in-Charge
       United States Attorney's Office
       Southern District of Texas
       Texas Bar No. 24068107
       S.D. Tex. ID No. 1132346
       1000 Louisiana St., Suite 2300
       Houston, Texas 77002

Telephone: (713) 567-9422  
Facsimile: (713) 718-3033  
Email: Richard.Kincheloe@usdoj.gov  
**Attorney for the Defendant**

## Certificate of Service

The undersigned certifies that he served the foregoing Brief on the parties receiving ECF notice in this case on April 24, 2020, through the Court's ECF notification system.

*s/ Richard A. Kincheloe*  
Richard A. Kincheloe  
Assistant United States Attorney

17